IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PATRICIA HAWKINS, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:21-CV-00265-SDJ-CAN |
| v. | § § | |
| UHS OF TEXOMA, INC. D/B/A TEXOMA MEDICAL CENTER, | § § § | |
| Defendant. | § § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant UHS of Texoma, Inc. d/b/a Texoma Medical Center's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1) ("Defendant's Motion to Dismiss") [Dkt. 6]. Defendant seeks dismissal of Plaintiff's suit under Federal Rule of Civil Procedure 12(b)(1),[1] and in accordance with the Federal Arbitration Act ("FAA"), as well as an order compelling this case to arbitration [Dkt. 6]. After reviewing Defendant's Motion to Dismiss, Plaintiff's Response [Dkt. 8], Defendant's Reply [Dkt. 11], and all other relevant filings, the Court recommends that Defendant's Motion to Dismiss be **GRANTED**, as set forth herein.

### BACKGROUND

Plaintiff Patricia Hawkins ("Plaintiff") initiated this suit on March 31, 2021 in the Eastern District of Texas, Sherman division alleging employment-related claims [Dkt. 1]. On April 29, 2021, the case was referred to the undersigned for all pretrial proceedings [Dkt. 5]. Defendant filed its Motion to Dismiss on May 11, 2021 [Dkt. 6]. The Court directed Plaintiff to file a

---

[1] A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).

response to the Motion to Dismiss [Dkt. 7]; Plaintiff's response was filed on June 1, 2021 [Dkt. 8]. Defendant replied on June 15, 2021 [Dkt. 11].

In Plaintiff's Complaint, she asserts claims for violation of 29 U.S.C. § 623, the Age Discrimination in Employment Act ("ADEA"); 29 U.S.C. § 2601, the Family and Medical Leave Act ("FMLA"); and Texas Labor Code § 21.051 [Dkt. 1 at 5-7]. In February of 2001, Plaintiff began working for Defendant as a Certified Respiratory Therapist [Dkt. 1 at 2]. On or about February 27, 2019, over eighteen years later, Plaintiff's employment was terminated [Dkt. 1 at 2]. Plaintiff avers that her employment was terminated after Defendant hired a new Director of Respiratory Therapy which resulted in a change of Plaintiff's floor assignment and Plaintiff receiving comments related to her retiring [Dkt. 1 at 2-4]. Plaintiff alleges her employment with Defendant was wrongly terminated based upon her age and requests for medical leave [Dkt. 1].

*Motion to Dismiss*

On May 11, 2021, Defendant filed the instant Motion to Dismiss urging that each of Plaintiff's claims are subject to a valid, enforceable arbitration agreement [Dkt. 6]. Defendant contends that beginning in 2014 it introduced an arbitration requirement for all employees. And that Plaintiff agreed to submit her claims to arbitration by her continued employment with Defendant after implementation of the Alternative Resolution of Conflicts Agreement ("ARC Agreement") in 2014 [Dkt. 6 at 4-5]. The ARC Agreement itself states in relevant part:

> [T]his Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration ("Covered Claims"). This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement.
>
> [T]his Agreement also applies, without limitation, to disputes regarding the employment relationship, compensation, breaks, and rest periods, termination, or

> harassment and claims arising under the Civil Rights Act of 1964, American With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act. . . Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.
>
> ***
>
> *Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.* In order to Opt Out of Arbitration, the Employee must submit a signed and dated statement on a "Alternative Resolution for Conflicts Agreement Opt Out Form" ("Form") that can be obtained from the Company's local or corporate Human Resources Department. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. *Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company.*

[Dkt. 6-4 at 1, 5] (emphasis in original). Defendant further avers that Plaintiff completed an online course explaining the ARC Agreement – including its provisions and procedures allowing employees to opt out – on November 25, 2013. In support of this contention, Defendant attaches to its Motion sworn declarations as to Plaintiff's notice of, and assent to, the ARC Agreement from Renee Connor ("Connor") and Michele Moreland ("Moreland"), Defendant's Human Resources Marketing Director and Learning Management Systems Administrator, respectively [Dkts. 6-1; 6-2]. Both Connor and Moreland declare that Plaintiff received an electronic copy of the ARC Agreement, indicated her review of the ARC Agreement, and assented to it through completion of the online training module [Dkts. 6-1; 6-2]. Plaintiff's assent to the ARC Agreement is further evidenced by an automatically generated "Certificate of Completion" attached to Defendant's Motion to Dismiss [Dkts. 6-1 at 3; 6-2 at 4; 6-8].

Plaintiff argues, to the contrary, that she was never informed of, nor ever completed an online course related to the ARC Agreement [Dkts. 8 at 1-2; 8-1]. Indeed, by affidavit, Plaintiff specifically denies completing the online module or ever receiving the ARC Agreement [Dkt. 8-1 at 2]. Plaintiff argues, in reliance on *Alorica v. Tovar*, 569 S.W.3d 736 (Tex. App.—El Paso, 2018, no pet.), that "Defendant has not shown it unequivocally notified Plaintiff of its proposed arbitration agreement and its specific terms, [and thus] no arbitration agreement arose between the parties" [Dkt. 8 at 5].

## FEDERAL ARBITRATION ACT [2]

Congress enacted the FAA to reverse the longstanding judicial hostility to arbitration agreements, and "to place [arbitration] agreements upon the same footing as other contracts." *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)). The FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. By enacting the FAA, Congress clearly intended "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 814 F.3d 300, 303 (5th Cir. 2016), and to effectuate this purpose, it specifically

---

[2] The ARC Agreement explicitly invokes the FAA [Dkt. 6-4 at 2]. Plaintiff does not dispute that her claims fall within the scope of the ARC Agreement [Dkt. 11 at 2]; upon review of the ARC Agreement, the Court determines they do. Plaintiff asserts claims for violation of the ADEA, FMLA, and Texas Labor Code § 21.051 [Dkt. 1 at 5-7]. The ARC Agreement explicitly covers: "claims arising under the Civil Rights Act of 1964, American With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act. . . Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters" [Dkt. 6-4 at 2].

authorized enforcement of arbitration agreements through court orders staying litigation and requiring that parties engage in the arbitration process. 9 U.S.C. §§ 3, 4.

Against this backdrop, the Court notes that "arbitration [remains] a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (citing *AT&T Techs. V. Comms. Workers of Am.*, 475 U.S. 643, 648 (1986)); *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 408 (5th Cir. 2014) ("arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Therefore, under the FAA (unless the parties have agreed to submit the arbitrability question itself to arbitration), the court must perform a two-step inquiry to determine whether to compel a party to arbitrate. First, the court must determine whether the parties agreed to arbitrate the dispute. *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021) (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). "That question involves two considerations: '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Id.* Courts determine the *validity* of arbitration agreements under applicable *state* law. *Kapai v. Unified Bus. Techs., Inc.*, No. 4:19-CV-00749-RWS-CAN, 2020 WL 3066646, at *3 (E.D. Tex. May 8, 2020). Second, if the court finds that the parties agreed to arbitrate, the court typically "must consider whether any federal statute or policy renders the claims nonarbitrable." *Polyflow*, 993 F.3d at 302. "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017). However, "once a court determines that an

agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Navarro v. Charlie Thomas Chevrolet, Ltd.*, 223 F. Supp. 3d 655, 658 (S.D. Tex. 2015).

In addition, § 3 of the FAA provides that when claims are properly referable to arbitration the Court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. However, that rule "was not intended to limit dismissal of a case in the proper circumstances." *Warren v. Muggle Towing, LLC*, No. 6:19-CV-588-JCB-KNM, 2020 WL 2598352, at *1 (E.D. Tex. Apr. 30, 2020) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)), *report and recommendation adopted*, No. 6:19-CV-00588, 2020 WL 2600973 (E.D. Tex. May 21, 2020). To be clear, "a district may dismiss, with prejudice, rather than stay, an action where all the issues are properly subject to arbitration." *SGC Health Grp., Inc. v. Eclinicalworks, LLC*, No. 3:15-CV-4022-M, 2016 WL 2595109, at *2 (N.D. Tex. May 4, 2016); *White v. Softlayer Techs., Inc.*, No. 3:15-CV-527-M, 2015 WL 5052365, at *6 (N.D. Tex. Aug. 27, 2015). Dismissal, rather than a stay, is appropriate when "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Hanna v. Ivy Funding Co., LLC*, No. 3:20-CV-231-L, 2020 WL 4220445, at *2 (N.D. Tex. July 23, 2020) (citing *Alford*, 975 F.2d at 1164). Stated differently, if "retaining jurisdiction and staying the action will serve no purpose[,]" the case should be dismissed rather than stayed. *The Shipman Agency, Inc. v. TheBlaze, Inc.*, 315 F. Supp. 3d 967, 976 (S.D. Tex. 2018).

## ANALYSIS

*Request to Compel Arbitration*

As discussed *supra*, "[w]hen considering a motion to compel arbitration, the Court must address two questions . . . 'First, whether there is a valid agreement to arbitrate, and second, whether the dispute in question falls within the scope of the arbitration agreement.'" *Jallo v. Resurgent Cap. Servs. LP*, 131 F. Supp. 3d 609, 612-13 (E.D. Tex. 2015) (quoting *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009)). Plaintiff does not challenge the scope of the ARC Agreement, focusing the entirety of her opposition on whether there is in fact a valid agreement to arbitrate between the Parties [Dkt. 8]. When the parties dispute whether a valid arbitration agreement exists, the party seeking to compel arbitration must show by "a preponderance of the evidence that the [opposing party] has entered into a valid arbitration agreement." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 503 (5th Cir. 2019).

"In Texas, an employer may condition an at-will employee's continued employment on assent to binding arbitration, even if the employee was initially hired in the absence of an arbitration agreement." *Barker v. UHS of Texoma, Inc.*, No. 4:18-CV-502, 2019 WL 2358923, at *1 (E.D. Tex. June 4, 2019) (*Alorica*, 569 S.W.3d at 740 (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568-69 (Tex. 2002)). Texas courts reason that, when "an employee receives proper notice of the arbitration agreement," his or her "decision to continue showing up for work thereafter" signals assent to the arbitration agreement. *Id.* Plaintiff argues a valid agreement to arbitrate does not exist because she never received proper notice of the ARC Agreement during her employment with Defendant [Dkt. 8 at 5].

The Parties each present evidence regarding the issue of proper notice [Dkts. 6-1; 6-2; 6-3; 6-4; 6-5; 6-6; 6-7; 6-8; 6-9; 8-1]. To establish the validity of the ARC Agreement, Defendant

proffers a certificate reflecting Plaintiff's completion of an online training module related to the ARC Agreement [Dkt. 6-8]; and further points to Plaintiff's continued employment with Defendant for many years after implementation of the ARC Agreement [Dkt. 6 at 4-5]. In addition, Defendant provides affidavits from both Connor and Moreland, its Human Resources Marketing Director and Learning Management System Administrators, affirming Plaintiff's completion of the "Alternative Resolution of Conflicts" course which informs the employee of the ARC Agreement and their ability to opt out of the ARC Agreement [Dkts. 6-1; 6-2]. Plaintiff argues this is insufficient to meet Defendant's evidentiary burden considering Defendant's failure to produce an electronic document with a specific identifier or signature as to Plaintiff and given Plaintiff's own sworn affidavit [Dkt. 8]. In her affidavit, Plaintiff states she never "received a copy of the 'ARC Agreement and Opt-Out Form' while employed by [Defendant]" and "never agreed to the 'Alternative Resolution of Conflicts'" [Dkt. 8-1 at 2].

Plaintiff urges that "[e]lectronic records showing receipt and acceptance of arbitration agreements are insufficient to defeat employee's sworn affidavit refuting employer's record." *Alorica v. Tovar*, 569 S.W.3d 736 (Tex. App. – El Paso, 2018, no pet.). Plaintiff relies exclusively on Texas' 8th District Court of Appeals opinion, *Alorica v. Tovar*, in asserting Defendant's proffered electronic records are not sufficient to demonstrate notice to Plaintiff of the ARC Agreement [Dkt. 8 at 4-5]. 569 S.W.3d at 736. However, the Court is not aware of a Texas Supreme Court case or any other Texas appellate case following *Alorica* for this blanket proposition. Indeed, the *Alorica* court itself acknowledged that a "conflict between the employer's records and the employee's sworn denials create[s] a fact issue on contract formation, meaning that the trial court c[an] find in either the employer or the employee's favor." 569 S.W.3d at 741.

Moreover, numerous federal district courts across the Fifth Circuit have rejected the same or similar argument. *Barker*, 2019 WL 2358923, at *2; *see, e.g.*, *Holmes v. Air Liquide USA LLC*, No. CIV.A. H-11-2580, 2012 WL 267194, at *2 (S.D. Tex. Jan. 30, 2012) (finding employer's evidence consisting of electronic documents met evidentiary burden that plaintiff had mutually assented to contract terms even when plaintiff declared otherwise), *aff'd sub nom. Holmes v. Air Liquide USA, L.L.C.*, 498 F. App'x 405 (5th Cir. 2012); *Walker v. Tao Operating, L.L.C.*, No. 1:13-CV-619, 2014 WL 11904577, at *6-7 (E.D. Tex. Aug. 14, 2014) (same), *report and recommendation adopted*, 2014 WL 11860775 (E.D. Tex. Sept. 12, 2014); *Washington v. Sears Logistics Servs., Inc.*, No. 3:13-CV-3060-L, 2014 WL 2159253, at *4 (N.D. Tex. May 23, 2014) (same). Consider *Barker*, a case involving the exact same defendant and online module as present in this cause. *Barker*, 2019 WL 2358923.[3] There, as here, the plaintiff objected to defendant's electronic evidence, in part, on the basis that it did not "contain an identification number specifically attributable to her" and submitted an opposing affidavit. *Id.* at *2. The *Barker* plaintiff similarly relied on *Alorica* in her effort to avoid arbitration. *Id.* at *3. Upon consideration and after hearing, United States District Judge Amos L. Mazzant, found that the affidavits of the defendant's employees attesting that the "documents are attributable to [plaintiff]" were sufficient support that such documents were completed by Plaintiff, and further that there was no indication that defendant's employees "have such an interest in this case that they would lie in sworn statements merely to compel arbitration." *Id.* at *2. To be clear, the *Barker* court held that alleged absence of "identifiers" on electronically produced documents is not dispositive as to whether a valid arbitration agreement exists. *Id.* The same reasoning is applicable herein; both Connor and Moreland testified that Plaintiff reviewed and agreed to the ARC Agreement and further, an

---

[3] Of further note, counsel for both Plaintiff and Defendant are the same in the *Barker* case as in the present case.

"identifier" clearly exists on the Certificate of Completion, as it bears Plaintiff's name [Dkts. 6-1; 6-2; 6-8].[4]  Moreover, there is no evidence that either Connor or Moreland have such an interest in the case "that they would lie in sworn statements merely to compel arbitration." *Barker*, 2019 WL 2358923, at *2.[5]

On balance, the Court finds Defendant's evidence more persuasive.  While the Court understands Plaintiff denies ever receiving or reviewing the ARC agreement [Dkt. 8-1], the evidence suggests that Plaintiff was indeed notified of the ARC Agreement and her ability to opt out of the ARC Agreement [Dkts. 6-1; 6-2; 6-7; 6-8].  Defendant has provided evidence that establishes: (1) all employees are required to complete an online course on the Alternative Resolution of Conflicts [Dkt. 6-2 at 2-3]; (2) the Alternative Resolution of Conflicts course informs employees of Defendant's ARC Agreement and their right to opt out in writing [Dkt. 6-2 at 3], and (3) Plaintiff completed this course and chose not to opt out of the ARC Agreement [Dkt. 6-1 at 3; 6-2 at 4].  Defendant provided both a document outlining each of the steps in the Alternative Resolution of Conflicts course completed by Plaintiff [Dkt. 6-7 at 2], as well as a "Certificate of Completion" bearing Plaintiff's name, dated November 25, 2013 [Dkt. 6-8 at 2]. Moreland stated that Plaintiff "did not opt out of arbitration.  If she opted out of the ARC Agreement, [Plaintiff] would not have received a Certificate of Completion for the Alternative Resolution of Conflicts Course, and instead her records would have reflected a completed version of the Alternative Resolution Conflicts Agreement Opt Out Form" [Dkt. 6-2 at 4].

---

[4] Notably, Plaintiff does not dispute the validity of the Certificate of Completion in her Response or Affidavit [Dkts. 8; 8-1].

[5] The more likely explanation, as voiced by Judge Mazzant in *Barker*, is that Plaintiff received notice of the ARC Agreement and has merely forgotten reviewing and agreeing to such document.  *Barker*, 2019 WL 2358923, at *2.

In sum, the Court finds Defendant's records and affidavits more reliable; Defendant has therefore established by a preponderance of the evidence that Plaintiff was provided notice of the ARC Agreement, the Court thus further determines that the ARC Agreement is valid.

*Motion to Dismiss*

Based upon the Court's determination that the ARC Agreement is a valid, enforceable arbitration agreement, and that Plaintiff's claims fall within the scope of the ARC Agreement, the Court finds Plaintiff's claims should be submitted to arbitration in accordance with the ARC Agreement leaving only a determination of whether dismissal of the instant cause while the arbitration proceeds is appropriate. To reiterate, a court may dismiss an action with prejudice, rather than stay it, when all claims are subject to arbitration. *Matos v. AT&T Corp.*, No. 3:18-CV-02591-M-BK, 2019 WL 5191922, at *3 (N.D. Tex. Sept. 9, 2019) (citing *Alford*, 975 F.2d at 1164), *report and recommendation adopted*, No. 3:18-CV-02591-M-BK, 2019 WL 5191487 (N.D. Tex. Oct. 15, 2019). Here, Defendant asks the Court to exercise such discretion. Defendant contends that "[b]ecause [Plaintiff's] claims are subject to a valid arbitration agreement, the Court should dismiss her Complaint and order her to proceed to arbitrate her disputes with [Defendant]" [Dkt. 6 at 2]. The Court agrees. Plaintiff asserts only employment related claims in her Complaint [Dkt. 1], which are clearly subject to the ARC Agreement, as noted *supra* [Dkt. 6-4 at 5]. Because the only *possible* role of the Court once arbitration is complete is to review the arbitration award, this case should be dismissed with prejudice. *See Athas Health, LLC v. Giuffre*, No. 3:17-CV-300-L-BN, 2018 WL 1026271, at *4 (N.D. Tex. Feb. 23, 2018) ("The reason for dismissal with prejudice is that retaining jurisdiction of the action by the district court serves no purpose because any remedies after arbitration are limited to judicial review based on the grounds set forth in the FAA."); *SGC Health Grp.*, 2016 WL 2595109, at *2 (finding dismissal with prejudice appropriate

because "[t]he only possible role the Court could have would be to review the arbitration award once the proceedings are concluded"); *Hanna*, 2020 WL 4220445, at *3 ("[R]etaining jurisdiction over Ivy Funding and the claims against it serves no purpose, as Plaintiff's and Ivy Funding's post-arbitration remedies will be limited to judicial review of the arbitrator's award based on the grounds set forth in the FAA.").

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends that Defendant UHS of Texoma, Inc. d/b/a Texoma Medical Center's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1) [Dkt. 6] be **GRANTED** as set forth herein. Plaintiff Patricia Hawkins's claims should be **DISMISSED WITH PREJUDICE** as they are subject to the ARC Agreement with Defendant; to the extent Plaintiff desires to pursue her claims against Defendant, she must pursue her claims in accordance with such agreement.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglas v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 26th day of July, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE